Filed Jan. 31, 1894.

———————◆———————

No. 999.

## JAAP *v.* DIGMAN ET AL.

PLEADING.—*Complaint, Sufficiency of.*— *To Set Aside Final Settlement.* —*Decedent's Estate.*—*Fraud.*—The final settlement of an estate may be set aside for mistake, fraud or illegality, as provided by section 2403, R. S. 1881. And a complaint comes within the provisions of the above section which states, in substance, that the defendants, seeking to cheat and defraud plaintiff out of his right in the property left him by his father and mother, both deceased, by falsely representing to the court that this plaintiff was dead, his whereabouts not being known since 1872, it now being 1887, by reason of which representations they caused plaintiff's estate to be administered upon, etc., in which a final settlement was made, etc., all of which proceedings were unknown to plaintiff, and whereas, in truth and in fact, the whereabouts of plaintiff was known to defendants all of such time. Wherefore, etc.

From the Allen Circuit Court.

*H. Colerick* and *J. E. K. France,* for appellant.

*T. E. Ellison,* for appellees.

Ross, J.—The appellee James Digman brought this action in the court below, against the appellant, to set aside the approval of the report of appellant as administrator of the estate of the appellee James Digman, an absent person, and to require an accounting to him for his property.

There is but one question presented by the record, which is argued by counsel, which will be considered on this appeal, and that question is as to the sufficiency of the facts stated in the complaint to constitute a cause of action.

The complaint, which is in two paragraphs, is as follows:

"James Digman complains of George Jaap, Mary Jaap, James D. White and J. E. K. France, and says that said Mary Jaap is his sister and said George Jaap is her husband; that this plaintiff's father, Phillip Digman, died in 1865, leaving a small estate in this county; that Elizabeth Digman, this plaintiff's mother, said Mary, and this plaintiff were his only heirs; that said Elizabeth, shortly after the death of her said husband, became insane, and so continued until her death, in 1889, and was confined in either the State asylum or the county asylum during that period; that because of the death of their father and the insanity of their mother, this plaintiff was taken to the Catholic Orphan Asylum at Rensselaer, Indiana, when but a small child, and, having no home, he worked for such people and at such places as he could find employment, mostly in this State, from that time until now; that said Jaap wrongfully and wickedly conceived the idea of cheating and defrauding this plaintiff out of the little property left him by his father and the interest he might have in his mother's estate; that to more speedily accomplish that purpose they did, on the 10th day of January, 1887, file a petition in this court,

in which they falsely and fraudulently represented to this court that the estate belonging to this plaintiff was going to waste, and that they had had no knowledge of his whereabouts since November, 1872, when in truth and in fact they knew that he was alive, and were informed where he could be found; that by reason of such fraudulent and false representations, they did procure an order from this court finding that this plaintiff was dead, and letters of administration were granted on his estate, to said George Jaap, and his said codefendants, James B. White and J. E. K. France, became and were his bondsmen as such administrator; that said bond has been lost, so that a copy of said bond can not be filed herewith; that this plaintiff does not know what property came into the hands of said Jaap, but is informed and believes that he received over twelve hundred dollars ($1,200), in property and money, belonging to this plaintiff, which he wrongfully and unlawfully converted to his own use and to the use of himself and said Mary Jaap; that to carry out said scheme, he caused the publication to be made in the Indianapolis Sentinel and in the Fort Wayne Dispatch, well knowing that this plaintiff would never hear or know of the same, when in truth and in fact he knew, or could have found out, from information he then had, just where this plaintiff was; that on the 16th day of April, 1888, said Jaap filed a pretended final report, in which he set forth that this plaintiff was deceased, and that said Mary Jaap was entitled, as the sister of this plaintiff, to one-half of his estate, and that said George Jaap, as the guardian of the said Elizabeth Digman, was entitled to the other half; that he took and kept for his own use, for his pretended services in so defrauding this plaintiff, the sum of thirty dollars ($30), and that he paid out fifty dollars ($50) of other costs and expenses wholly unnecessary and wrong-

fully; that in December, 1888, said Jaap made such rep-
resentations to this court as to the death and decease of
this plaintiff, and to his having given notice thereof,
that this court did approve of said final report, and dis-
charged said Jaap from further acting as such adminis-
trator; and the plaintiff avers that all the acts done by
said Jaap were fraudulent and void as to this plaintiff,
and that the representations made by him to procure the
same were false, and known by him to be so at the time
when made, and that they should all be set aside; that
said James B. White and J. E. K. France, in the execu-
tion of said bond, wrongfully combined and conspired and
made it possible for said George Jaap and Mary Jaap to
commit said fraud on this plaintiff, well knowing that
such proceedings were not authorized by law, and that
the same were wrongful, fraudulent and void as to this
plaintiff; that this plaintiff knew nothing of any of said
proceedings until within the last six weeks, and never
surmised that said defendants were doing or had done
any of said acts.

"Wherefore this plaintiff asks that the approval of all
reports and acts done by said George Jaap be set aside
and declared fraudulent and void, and that he have judg-
ment for two thousand dollars ($2,000) against all of
said defendants, and that said judgment be declared to
be without relief from valuation and appraisement laws,
and all homestead and exemption laws, and for all other
proper and equitable relief."

For a second cause of action, the plaintiff says:

"That his father, Phillip Digman, died in 1865, the
owner of certain real estate in this county; that Eliza-
beth Digman, the wife of the said Phillip and mother of
this plaintiff and the defendant Mary Jaap, shortly after
the death of his said father, became insane, and so con-
tinued until her death in 1889; that John Nail became

Jaap *v.* Digman *et al.*

and was for several years the guardian of this plaintiff; that said George Jaap is the husband of Mary Jaap, and that they two conceived the purpose of cheating and defrauding this plaintiff out of his interest in his father's and mother's estate; that they brought an action for the partition of said real estate, and procured an order of this court that the same was indivisible, and an order appointing the defendant herein, J. E. K. France, a commissioner to sell the same, when said property could easily have been divided between said parties; that said France, as such commissioner, sold said property to said George Jaap for much less than its real value; that failing in said action to get possession of this plaintiff's interest in said real estate, they did, on the 10th day of January, 1887, file a petition in this court to declare this plaintiff dead, and made such representations to this court that said George Jaap was appointed administrator of the plaintiff's estate, and authorized to take possession of all property and assets belonging to him, and in order to enable him so to do, he filed a bond; that said bond has been lost, so that a copy thereof can not be filed herewith, executed by said James B. White and J. E. K. France as his sureties; that the plaintiff does not know what property or assets he received, but is informed and believes that the sum amounted to about twelve hundred dollars ($1,200); that in April, 1888, said George Jaap, as administrator, filed a report in this court, setting forth the decease of this plaintiff, and that said Mary Jaap and himself, as guardian for Elizabeth Digman, were entitled to all the assets in said estate, and made such false and fraudulent representations to this court that his acts as such administrator were approved, and said money was paid over to said Mary Jaap and himself, when in truth and in fact this plaintiff was known to be alive, and his

whereabouts could have been ascertained if they had so desired; that this plaintiff did not know that any of said facts nor that any of said acts had been done or occurred till within three months last past.

"Wherefore plaintiff says that by reason of said wrongful acts the said defendants came into and have possession of said sum of twelve hundred dollars ($1,200), in property and assets, belonging to this plaintiff, and plaintiff demands judgment that all of said proceedings of this court be declared fraudulent and void, and that said defendants be required to account to him for the value of all the property which came into their hands by any and all of said proceedings, and that he have judgment for two thousand dollars ($2,000), and that the same be declared a trust; that said defendants be required to pay the same to him out of any property or money they may have, or be deemed in contempt of this court, and punishable as for contempt in failing so to do."

The appellant insists that "By this complaint, the appellee, James, in this action seeks to have the court open up the matter of the partition judgment; wipe out collaterally the judgment finding him dead; call upon appellant again to report his stewardship as his guardian; likewise to report as his mother's guardian, and to again report and settle with the court as his administrator;" and, further, that this is a collateral attack upon the judgments pleaded, and that they are unassailable and unimpeachable in such a proceeding.

On the other hand, it is insisted, by counsel for appellees, that this is a proceeding to set aside the final report made by the appellant as administrator, and to compel him to account for the money in his hands belonging to appellee James Digman.

The approval of an administrator's or guardian's final report and settlement is a final adjudication of all mat-

ters appertaining thereto, and precludes all collateral inquiry into the correctness thereof, by the parties interested therein, who have been duly notified, so long as such judgment of approval remains in force. *Pate, Exr.*, v. *Moore, Admr.*, 79 Ind. 20; *Carver* v. *Lewis, Admr.*, 105 Ind. 44; *Castetter, Admr.*, v. *State, ex rel.*, 112 Ind. 445.

The judgment of approval of the final report and settlement may be set aside at any time within three years from the date of such settlement, at the instance of any person interested in the estate, who neither appeared at the final settlement nor was personally served with a summons to attend the same, and if a minor, or under legal disability at the time of such final settlement, at any time within three years after the removal or cessation of such disability. Section 2403, R. S. 1881.

The judgment of approval is an adjudication only so far as it rests upon matters properly embraced within such report, relative to the proper management and settlement of the ward's estate. *Wainwright* v. *Smith*, 106 Ind. 239.

Under section 2403, *supra*, the approval of a final report and settlement of an estate may be set aside for mistake, fraud, or illegality. *Pollard* v. *Barkley*, 117 Ind. 40.

The complaint or petition in this case is apparently intended to come within the requirements of that section, and we think it sufficient for that purpose.

There is no error in the record.

Judgment affirmed.

Filed Jan. 4, 1894.